UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-24654-BLOOM/Elfenbein

DESIREE E. LIMA,

     Plaintiff,

v.

STAR VAN SYSTEMS, INC.
and HARVIR SINGH,

     Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Star Van Systems, Inc. ("SVS") and Harvir Singh's ("Singh") (collectively "Defendants") Motion for Summary Judgment, ECF No. [28] ("Motion"). Plaintiff Desiree Lima ("Plaintiff") filed a Response in Opposition to Defendants' Motion ("Response"), ECF No. [30], to which Defendants filed a Reply, ECF No. [32]. The Court has reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I.    BACKGROUND

This action arises from a July 9, 2024, rear-end vehicle collision involving Plaintiff and Defendant Singh, who, at the time, was operating Defendant SVS's vehicle. As a result of the collision, Plaintiff brought the instant action against Defendants in the Eleventh Judicial Circuit in and for Miami-Dade County, asserting a claim of negligence against both Singh and SVS, and a count of negligence against SVS based on a theory of dangerous instrumentality. *See* ECF No. [1-2].

Defendants timely removed the action to federal court pursuant to this Court's federal diversity jurisdiction under 28 U.S.C. § 1332, and the parties engaged in discovery. Defendants now move for summary judgment on each count and contend that Plaintiff cannot establish causation or that she suffered a permanent injury sufficient to prove her negligence claims *See generally* ECF No. [28].

### A. Material Facts

The following facts are not materially in dispute for the purposes of this Motion unless otherwise noted. A rear-end collision occurred on July 9, 2024, involving Plaintiff, her vehicle, Singh, and SVS's vehicle. Defendants intend to "admit liability for the collision" and, therefore, only the issues of causation and damages are in dispute. *See* ECF No. [31] at ¶ 8; ECF No. [27].

"On December 26, 2024, the Court entered a Scheduling Order outlining deadlines in this matter." ECF No. [31] at ¶ 6; *see also* ECF No. [14]. The Court established "August [19], 2025, [as the date to disclose experts and] to exchange expert witness reports, and September 2, 2025, [as the date] to exchange rebuttal expert witness summaries or reports. ECF No. [31] at ¶ 7; ECF No. [14]. "On June 13, 2025, Defendants' counsel deposed Plaintiff," and on June 17, 2025, Defendants' counsel reached out to Plaintiff's counsel for the first time about scheduling Plaintiff's medical examination. Defendants' counsel informed Plaintiff's counsel that they intended to schedule the examination in September but did not propose any dates. *See* ECF No. [32-3] at 1. On July 23, 2025, Plaintiff's counsel followed up about scheduling Plaintiff's medical examination. ECF No. [31] at ¶ 10; ECF No. [31-2] at 36. Defendants' counsel informed Plaintiff's counsel that they wanted to schedule the medical examination sometime in September, and they would send over proposed dates to Plaintiff's counsel once they had them. *Id.* On August 1, 2025, Plaintiff's counsel "reminded Defendants' counsel that no dates had been provided for the medical

examination of Plaintiff, and any extensions would be opposed by Plaintiff as she was 'ready, willing, and able, to undergo the examination.'" ECF No. [31] at ¶ 12; ECF No. [31-2] at 40. On August 11, 2025—one week before the Court's deadline to exchange expert reports— "Defendants' counsel sent dates for Plaintiff's medical examination, specifically 9/12, 9/15, 9/19[,] or 9/22." ECF No. [31] at ¶ 13. "That same day," Plaintiff's counsel confirmed that Plaintiff's medical examination could be completed on September 19, 2025. *Id.*

On August 11, 2025, Defendants also disclosed that Dr. David J. Fletcher would be their lone expert, and on August 19, 2025, Plaintiff "disclosed that Dr. Robere Missirian" would be her expert and "testify based on his treatment and evaluation of Plaintiff. *Id.* at ¶ 4. Although Dr. Missirian plans to testify about his treatment of Plaintiff's injuries at trial, he "has not authored [or provided any] reports other than Plaintiff's medical records." *Id.* The parties dispute whether Dr. Missirian has been retained by Plaintiff as the type of expert who is required to provide an expert report. *See* ECF No. [29] at ¶ 4; ECF No. [31] at ¶ 27. Furthermore, while Defendants contend that Plaintiff has not proffered an expert to testify as to the issue of "causation" or the "permanency of [her] injuries," Plaintiff asserts that Dr. Missirian's medical reports, his affidavit, and his anticipated testimony establish the need for "surgical intervention due to the permanent injury [Plaintiff] suffered in the subject automobile crash." *Id.* at ¶ 5.[1]

On September 24, 2025, "five days after Plaintiff's medical examination was completed," Plaintiff's counsel asked about the status of Dr. Fletcher's expert report. *Id.* at ¶ 16. "No response was received." *Id.* Two days later, Plaintiff's counsel followed up again. This time, Defendants

---

[1] Plaintiff's treating physician, Board Certified Orthopedic and Extremity surgeon Dr. Robere J. Missirian, M.D. has opined that as a result of the automobile accident, Plaintiff has suffered a permanent injury, Plaintiff has restrictions in her activity, and Plaintiff needs future care and treatment. ECF No. [31] at ¶ 26.

provided a preliminary report, but Dr. Fletcher's final report remained outstanding. *Id.* at ¶ 17. Dr. Fletcher's final report was eventually provided to Plaintiff on September 29, 2025.

One week after receiving Dr. Fletcher's report, Plaintiff requested to depose Dr. Fletcher and "provided six possible dates for the deposition." *Id.* at ¶ 22. Defendants' counsel, however, was not available on any of those dates. *Id.* Notwithstanding Plaintiff's outstanding request to depose Dr. Fletcher, Defendants filed the instant Motion for Summary Judgment "based on Dr. Fletcher's untimely report." *Id.* at ¶ 23.

## II.     LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the nonmoving party has the burden of proof at trial, to prevail at summary judgment[,] the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). "If the moving party shows an absence of evidence of a material fact, the burden of production shifts to the nonmoving party, who must identify evidence in the record or present 'additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Id.* (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of*

*Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant.").

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc.*

*v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

## III.   DISCUSSION

Defendants argue that summary judgment is warranted because "discovery has closed" and there has been "no disclosure of, or testimony as to, causation," which is necessary to establish any negligence claim, regardless of the type. ECF No. [28] at 2. Furthermore, Defendants contend [P]laintiff cannot establish that she suffered a significant and permanent loss to an important bodily function, a permanent injury within a reasonable degree of medical probability[,] or significant and permanent scarring or disfigurement, as required to establish third[-]party motor vehicle tort liability under Florida's No Fault Act." ECF No. [28] at 1 (citing Fla. Stat. § 627.730, *et seq.* (the "No Fault Act"). *Id.* at 2. According to Defendants, to establish a permanent injury, "there must be testimony by a medical professional," and no such testimony has been proffered. *Id.* Defendants point out that Plaintiff has only disclosed the "Curriculum Vitae of one witness [, Dr. Robere Missirian,] and did not provide any [expert] report with the disclosure." *Id.* The only reports that Plaintiff provided in discovery were the medical reports Dr. Missirian created as Plaintiff's treating physician. Therefore, Defendants argue that Plaintiff has failed to proffer any expert report, testimony, or other evidence that is capable of establishing the cause or the permanency of Plaintiff's injuries.

Defendants insist the only admissible evidence regarding Plaintiff's injuries comes from their expert, Dr. Fletcher, who has opined "that '[Plaintiff] suffered no major bony injury, did not suffer any permanent impairment and has no need for any work or activity restrictions resulting

from her injuries allegedly sustained in the Incident." *Id.* (quoting ECF No. [28-1] at ¶ 18).

Plaintiff responds that Dr. Fletcher's expert report may not serve as a basis for summary judgment because it was untimely prepared, untimely disclosed, and the delayed disclosure has unduly prejudiced Plaintiff. *See* ECF No. [30] at 2. Rather than disclosing Dr. Fletcher's report on August 19, 2025, as required by the Court's Scheduling Order, ECF No. [14], Plaintiff points out that the report was not disclosed until "September 29, 2025, forty-one days after the Court's deadline had passed." *Id.* Not only did Defendants fail to comply with the Court's Scheduling Order, but Plaintiff also contends that under Rule 26(a)(2)(B)(2), parties are required to provide a written report if the witness is retained to provide expert testimony. Plaintiff argues that "[i]f a party fails to comply with these requirements, the Court can consider whether to strike and preclude the witness from testifying at trial." *Id.* (citing *Penick v. Harbor Freight Tools*, *USA, Inc.*, 481 F. Supp. 3d 1286, 1289 (S.D. Fla. 2020)). Plaintiff argues that the factors courts consider when determining the appropriate remedy for an untimely expert disclosure all favor striking the report and precluding Dr. Fletcher from testifying at trial.

According to Plaintiff, the untimely report is unimportant, and Defendants do not need Dr. Fletcher's opinions at trial as they may adequately "defend their position through cross-examination of the Plaintiff and [her] expert[ ]." *Id.* at 5. Moreover, Defendants have failed to offer any justification for the late disclosure. Plaintiff maintains that Defendants had no sense of urgency or respect for the Court's deadlines as evidenced by Defense counsel's emails. Most importantly, however, Plaintiff argues that she "has been extremely prejudiced by Defendant[s'] late disclosure. *Id.* at 6. Given the untimely disclosure of the report and Defendants' subsequent delays, Plaintiff asserts that she was unable to depose Dr. Fletcher prior to filing her response to the instant Motion

and is concerned she will be unable to depose him prior to the upcoming January trial date, given the holidays and Defense counsel's schedule. *Id.*

Even if the Court decides not to exclude Dr. Fletcher's report or testimony, Plaintiff argues that summary judgment is still inappropriate because Defendants' evidence in support of the Motion is unreliable and improper. Plaintiff points out that Dr. Fletcher's affidavit is based on "an untimely disclosed report" that is largely inconclusive and presents findings "that he has no qualifications to give." *Id.* at 7. Plaintiff argues that while Dr. Fletcher is a medical doctor, he "is not qualified to offer expert opinions as to [her] mental state, physical state, the reasonableness of her treatment, or whether she suffered a permanent injury" because he does not specialize in those areas of medicine and because he is neither a psychiatrist nor a surgeon. *Id.*

Plaintiff maintains that summary judgment is also inappropriate because "Plaintiff's treating physician has opined that Plaintiff suffered a permanent injury" because of the collision. *Id.* at 10. Although "Dr. Missirian's prior medical reports did not state the words 'permanent injury,' all of his treatment recommendations are because Plaintiff suffered a permanent injury." *Id.*

Plaintiff further argues that despite Defendants' contention to the contrary, "[a] treating physician is not required to produce a written report if h[is] opinions are derived from the examination and treatment of the patient." *Id.* Therefore, Plaintiff insists the evidence from Dr. Missirian, including his affidavit, may be considered. As such, Plaintiff maintains that she has established a genuine dispute of material fact as to the cause and permanency of her injuries.

As the Motion appears to largely turn on whether the Court may consider Dr. Fletcher's and Dr. Missirian's opinions, the Court addresses the evidence and the purported discovery violations in turn.

### A. Defendants' Evidence—Dr. Fletcher's Report and Affidavit

Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To make a proper disclosure regarding a retained expert, parties must disclose an expert's identity "accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). The written report must contain an array of information, including a "complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and the witness' qualifications, lists of cases where the witness testified as an expert, the expert's fee arrangement, and exhibits used to summarize or support the expert's opinions. *Id.*

Regarding the timing to disclose expert testimony, expert disclosures must be made at the times and in the sequence that the court orders. Fed. R. Civ. P. 26(a)(2)(D). Absent a stipulation or court order, the disclosures must be made at least 90 days before the date set for trial or for the case to be ready for trial; or if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure. *Id.*

If a party violates Rule 26(a), Rule 37(c) provides for the exclusion of the expert evidence or any other appropriate sanction "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also B. F. Goodrich Tire Co. v. Lyster*, 328 F.2d 411, 415 (5th Cir. 1964) (explaining that Rule 37 establishes a "a flexible means by which a court may enforce compliance with the Federal discovery procedures through a broad choice of remedies and penalties"). The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824-8 (11th Cir. 2009). In making this determination, the Court considers four factors: "(1) the

importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (quoting *Berryman–Dages v. City of Gainesville Fla.*, No. 1:10cv177–MP–GRJ, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012)).

Ultimately, however, the "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Smith v. Jacobs Eng'g Grp., Inc.*, No. 4:06CV496-WS/WCS, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008) (citation and internal quotation omitted), *report and recommendation adopted*, No. 4:06 CV 496 WL, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008); *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-23074-CIV, 2014 WL 3764126, at *2 (S.D. Fla. July 30, 2014) (noting that a court has "great discretion in deciding whether to impose such a sanction" for failure to comply with expert witness disclosure requirements).

Here, there is no genuine dispute that Defendants waited to disclose Dr. Fletcher's expert report to Plaintiff until well after the Court's deadline and failed to request an extension. Defendants nevertheless argue that the delayed disclosure was excusable because Dr. Fletcher could not complete his report until he had examined Plaintiff. ECF No. [32] at 2. Defendants point out that they initially reached out to Plaintiff's counsel to schedule a medical examination of Plaintiff on June 17, 2025, more than "58 days prior to the Court[-]ordered deadline." *Id.* Therefore, Defendants argue that any delay in disclosing Dr. Fletcher's expert report was due to

Plaintiff's unavailability rather than a lack of diligence on Defense counsel or Dr. Fletcher's part. *Id.*

Defendant's argument is unconvincing. In their June 17, 2025 email, Defendants' counsel first requested to conduct a medical examination of Plaintiff and asked to schedule the examination for a date in September. *See* ECF No. [33-3] (email from Defense counsel asking Plaintiff's counsel if there were dates "on Fridays or Mondays in *September* where plaintiff is available.") (emphasis added). Notwithstanding that the deadline to disclose expert reports was August 19, 2025, Defendants have failed to offer any evidence that they intended to schedule Plaintiff's medical examination before September let alone made any effort to do so. Accordingly, Defendants' argument that "any delay in disclosing Dr. Fletcher's Report was due to plaintiff's scheduling, not [D]efendants'" is disingenuous.

Although Defendants fail to provide a justifiable excuse for the delayed disclosure, the Court does not find that the delay prejudiced Plaintiff to such an extent that striking Dr. Fletcher's expert and excluding his testimony is the only appropriate remedy. *See Aponte v. Royal Caribbean Cruises, Ltd.*, No. 15-21854-CIV, 2016 WL 11724709, at *1 (S.D. Fla. July 20, 2016) ("Having an expert's testimony stricken in its entirety is a drastic sanction."). According to Plaintiff, Defendants' delay has prevented her from having a full opportunity to depose Dr. Fletcher about his expert report. However, given that the trial is not scheduled to begin until mid-January, the Court finds that Plaintiff would have more than sufficient time to depose Dr. Fletcher and prepare for trial were the Court to reopen discovery on a limited a basis. *See Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 686 (N.D. Fla. 2020) ("When a party has 'ample time to depose' a witness 'or otherwise seek discovery' with respect to the witness and his likely testimony, any tardiness in disclosing the witness typically is harmless."). Accordingly, the Court

will not impose the drastic sanction of striking Dr. Fletcher's report and will consider the report for the purposes of the instant motion. *See Collier v. Geico General Ins. Co.*, No. 6:20-cv-1208, 2021 WL 3668351, at *3 (M.D. Fla. July 26, 2021) ("[T]he law has a strong preference to resolve cases on their merits rather than on technicalities.").

Plaintiff argues that even if the Court excuses Defendants' untimely disclosure of the expert's report, the Court should still strike the report and exclude Dr. Fletcher's testimony because he is unqualified, and his opinions are unreliable. However, the Court disagrees. "The standard for qualification is not stringent, and an expert need only be minimally qualified in his or her field." *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 114 (S.D. Fla. 2024). Accordingly, "gaps in [an expert's] qualifications generally will not preclude admission of his testimony, as this relates more to witness credibility and thus the weight of the expert's testimony, than to its admissibility." *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009), *aff'd sub nom. Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010). Nevertheless, Plaintiff maintains that despite Dr. Fletcher being board certified in "occupation medicine and preventive medicine," he is unqualified to testify about Plaintiff's injuries, medical treatment, and need for surgery because Dr. Fletcher is not a surgeon, orthopedic doctor, or psychologist. However, a proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline. *See Galarza v. Carnival Corp.*, No. 15-24380-CIV, 2016 WL 7507883, at *7 (S.D. Fla. Aug. 8, 2016) (finding that expert did "not need to be a psychologist, psychiatrist, or orthopedic surgeon to render opinions" as to "the probable causes of Plaintiff's knee pain, the probability of Plaintiff needing a knee replacement, and Plaintiff's symptoms of depression") (citing *Gaydar v. Sociedad Instituto Gineco–Quirurgico y Planificacion Familiar*, 345 F.3d 15, 24 (1st Cir. 2003) ("[P]roffered expert physician need not be a specialist in a particular medical discipline to render

12

expert testimony relating to that discipline . . .. In fact, it would have been an abuse of discretion

for the court to exclude [the physician's] testimony on the sole basis that his medical specialty [sic]

was something other than [the specialty at issue]." (alterations added)). So long as the Court finds

that that expert's testimony would assist a trier of fact, an expert witness with generalized

knowledge may testify on a subject despite lacking specialized training or experience. *See Whelan*

*v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). Here, the Court

finds that Dr. Fletcher has sufficient knowledge, education, and experience regarding the subject

matter such that his testimony will assist the jury in determining causation and damages and Dr.

Fletcher is qualified. *See Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3

(S.D. Fla. June 25, 2009) ("[S]o long as the expert is minimally qualified, objections to the level

of the expert's expertise [go] to credibility and weight, not admissibility.").

Plaintiff also contends that "Dr. Fletcher's opinions are not based upon sufficient facts or

data as they are based on inapplicable, self-testing questionnaires." ECF No. [30] at 9. However,

given that "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence[,]" courts have "'considerable leeway in deciding in a particular case how to

go about determining whether particular expert testimony is reliable' and whether the factors 'are

reasonable measures of the reliability of expert testimony.'" *In re Zantac (Ranitidine) Prods. Liab.*

*Litig.*, 644 F. Supp. 3d 1075, 1103 (S.D. Fla. 2022) (quoting *Kumho Tire Co. v. Carmichael*, 526

U.S. 137, 152 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

Considering this flexible standard, the Court finds that Dr. Fletcher's opinions are sufficiently

reliable to be presented to the jury. Dr. Fletcher not only conducted a medical examination of

Plaintiff, but he reviewed her medical records, dashcam footage of the accident, Plaintiff's

deposition, and post-accident photos along with numerous other pieces of evidence in this case in rendering his opinions. Furthermore, during Dr. Fletcher's examination, he utilized various tests to measure Plaintiff's injuries while also offering a reasoned explanation for relying on those tests to form his opinions. While Plaintiff challenges the efficacy of relying on the specific self-reporting tools Dr. Fletcher used to measure the extent of Plaintiff's injuries, such challenges go to the weight of the evidence as opposed to the admissibility, especially given that self-reporting is a generally reliable method of evaluating a patient. *Barwick v. Dillard House, Inc.*, No. 2:22-CV-173-RWS, 2023 WL 11909766, at *11 (N.D. Ga. Dec. 14, 2023) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987) (noting that a "patient's oral history is generally considered reliable"); *Flowers v. Wal-Mart Stores, Inc.*, No. 3:03-CV-35(CAR), 2005 WL 2787101, at *6 (M.D. Ga. Oct. 27, 2005) (noting that "[s]ubjective reports of pain and other symptoms by a patient are an important part of a physician's examination, and doctors routinely rely on such statements"). Accordingly, because the Court finds that Dr. Fletcher is qualified, his expert testimony is reliable, and the testimony will assist the trier of fact in reaching their verdict, the Court will not strike or otherwise exclude Dr. Fletcher's report or expert testimony at this time.[2]

Therefore, because the Court has decided not to strike Dr. Fletcher's expert report, Plaintiff must put forth evidence rebutting Dr. Fletcher testimony regarding Plaintiff's injuries.

### B.  Plaintiff's Evidence—Dr. Missirian's Affidavit and Medical Records

Plaintiff asserts negligence claims against Defendants under Florida law and must establish that Defendants (1) owed a duty to conform to a reasonable standard of care; (2) that Defendants breach that duty; (3) that there exists "a reasonably close causal connection between [Defendants'] conduct and [her] resulting injuries;" and (4) that she suffered damages. *Clay Elec. Co-op., Inc. v.*

---

[2] To the extent Plaintiff also contends that Dr. Fletcher's expert testimony will not assist the trier of fact, the Court rejects that argument as well.

*Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003); *see Cedant v. United States*, 75 F.4th 1314, 1317 (11th

Cir. 2023) ("Florida law applies here, and in negligence cases like this one[,] it requires the usual

showing of duty, breach, causation, and harm.") (citing *Williams v. Davis*, 974 So. 2d 1052, 1056

(Fla. 2007)). "Expert testimony is required to prove causation 'where the issue is beyond common

knowledge of laymen.'" *Rodriguez v. Walmart Stores E., L.P.*, No. 21-14300, 2022 WL 16757097,

at *2 (11th Cir. Nov. 8, 2022) (quoting *Benitez v. Joseph Trucking, Inc.*, 68 So. 3d 428, 431 (Fla.

5th DCA 2011)). "Under Florida law, 'soft tissue injuries, such as lower back difficulties, are not

readily observable, and hence are not susceptible to evaluation by lay persons.'" *Id.* (quoting *Vero*

*Beach Care Center v. Ricks*, 476 So. 2d 262, 264 n.1 (Fla. 1st DCA 1985). Plaintiff does not

contend her injuries are readily observable or otherwise within a layperson's common knowledge.

Accordingly, she must provide expert testimony establishing a causal connection between

Defendants' negligent conduct and her injuries.

Here, the only evidence Plaintiff relies upon are her medical records and an affidavit from

her treating physician, Dr. Missirian. ECF No. [31-7]; ECF No. [31-8]. Defendants contend that

Dr. Missirian's affidavit and his opinions may not be used to establish causation or the permanency

of Plaintiff's injuries because Dr. Missirian is an expert, and Plaintiff has not complied with the

expert disclosure requirements set out in Fed. R. Civ. P. 26(a)(2)(B)—specifically, the expert report

requirement. However, Rule 26(a)(2)(B)'s disclosure requirements only apply to retained experts.

*See Cedant*, 75 F.4th at 1321 ("Witnesses governed by Rule 26(a)(2)(B) are often called 'retained

experts' as a shorthand.") (citing *Goodman v. Staples the Off. Superstore, LLC*, 644 F.3d 817, 827

(9th Cir. 2011)). While a plaintiff's treating physician may be required to produce a Rule

26(a)(2)(B) expert report when the physician was first specifically retained as an expert, a treating

physician who has not been retained as an expert or is only retained after becoming the plaintiff's

treating physician, need only satisfy the less onerous disclosure requirements set out in Rule 26(a)(2)(C). *See Cedant*, 75 F.4th at 1321-22.[3]

Because Dr. Missirian began his relationship with Plaintiff as her treating physician, as opposed to a paid expert hired for the instant litigation, Dr. Missirian is a non-retained expert and is therefore not required to provide a Rule 26(a)(2)(B) report. *See Cedant*, 75 F.4th at 1322; *see also Hornsby v. Carnival Corp.*, No. 22-CV-23135, 2023 WL 8934518, at *7 (S.D. Fla. Dec. 27, 2023) (noting that "plaintiff's treating physicians [are] thus not subject to Rule 26(a)(2)(B)'s disclosure requirements, as treating physicians . . . are first hired by their patients to treat rather than to testify.") (internal citations and quotations omitted).

Accordingly, to satisfy her Rule 26 disclosure obligation, Plaintiff is required to provide "the subject matter on which the witness is expected to present evidence[,] and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). To satisfy this disclosure requirement, "a party must do more than 'identify generic subject areas of anticipated testimony, without identifying the actual substance or content of the opinions on which testimony is expected," and "the expert should do more than merely produce medical records." *Torres*, 555 F. Supp. 3d at 1298 (quoting *Almonte v. United States*, Case No. 19-80129-Civ, 2021 WL 3418402, at *3 (S.D. Fla. Apr. 21, 2021); *Sweat v. United States*, Case No: 8:14-cv-888-T-17JSS, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015)).

Here, however, the only disclosure made by Plaintiff states as follows: "Plaintiff's expert at trial will be her treating doctor[,] Dr. Robere Missirian, M.D. He will testify based on his treatment and evaluation of Plaintiff[;] he has not authored any reports other than Plaintiff's

---

[3] *See Cedant*, 75 F.4th at 1321 ("[I]f an expert witness does not need to file a Rule 26(a)(2)(B) report, then a party does need to file a Rule 26(a)(2)(C) disclosure on her behalf. The shorthand for these witnesses is 'non-retained.'").

medical records which have been previously provided." ECF No. [29-3] at 1. While Plaintiff's disclosure identifies Dr. Missirian, it provides little additional information other than to say that he will be testifying about Plaintiff's treatment. The disclosure fails to identify any specific subject matter Dr. Missirian intends to cover and fails to provide a summary of what opinions Dr. Missirian intends to provide regarding his treatment of Plaintiff. *See O'Brien v. NCL (Bahamas) Ltd.*, Case No. 16-23284, 2017 WL 8315925, at * (S.D. Fla. Aug. 25, 2017) (finding that simply stating that a treating physician would testify about "permanent impairment" and "the relationship between his medical condition and the alleged incident" and similar disclosures were insufficient to satisfy Rule 26(a)(2)(C)); *Leibson v. TJX Companies, Inc.*, No. 8:17-CV-1947-T-33TGW, 2018 WL 3868708, at *3 (M.D. Fla. Aug. 14, 2018) ("[T]he mere reference to 'damages and medical treatment' as the subject matter of the treating physicians' testimony does not satisfy Rule 26(a)(2)(C)") (quoting *Bostick v. State Farm Mut. Auto. Ins. Co.*, No. 8:16-CV-1400-T-33AAS, 2017 WL 2869967, at *2 (M.D. Fla. July 5, 2017)). Despite Plaintiff now insisting that Dr. Missirian will provide expert testimony as to causation and the permanency of her injuries, the August 19th disclosure fails to adequately notify Defendants of the anticipated expert testimony. The Court therefore finds that Plaintiff has failed to satisfy the Rule 26(a)(2)(C) requirements with respect to Dr. Missirian.[4] Consequently, the Court must determine the consequences, if any, of this unsatisfactory disclosure.

---

[4] The Court also does not find that Plaintiff's disclosure of her medical records remedies the shortcoming in her Rule 26(a)(2)(C) disclosure. *See Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20322-CIV, 2013 WL 8695361, at *4 (S.D. Fla. Apr. 4, 2013) ("Allowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'") (quoting *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *6 (N.D. Ga. Mar. 21, 2013) (internal quotation marks omitted)).

Generally, "[i]f a party fails to properly disclose an expert witness under Rule 26(a), the party may not use the witness 'unless the failure was substantially justified or is harmless.'" *Izquierdo v. Certain Underwriters at Lloyd's London*, No. 20-13772, 2021 WL 3197008, at *4 (11th Cir. July 29, 2021) (quoting Fed. R. Civ. P. 37(c)(1)). As previously explained, in making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres*, 2018 WL 3729553, at *2.

First, the Eleventh Circuit has held that "[w]hen the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017). The Court therefore finds that the first factor, the importance of the excluded testimony, weighs against the exclusion of Dr. Missirian's affidavit and expert testimony. As for the second factor, Plaintiff fails to offer a reason for the inadequate disclosure and, as such, the second factor weighs in favor of exclusion. Regarding the third factor, "[p]rejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe*, 106 F. Supp. 3d at 1260. Defendants make no argument that they were deprived of any meaningful opportunity to conduct discovery or depose Dr. Missirian prior to filing the instant Motion.[5] Moreover, Defendants had the opportunity to seek the intervention of the Court for Plaintiff's non-compliance

---

[5] Any potential prejudice is particularly suspect given that Defendants hired their own expert to challenge permanency, causation, and damages. Defendants seem to have understood that those issues would be the focus of Plaintiff's expert testimony well before the close of discovery. *See Frank v. Nature's Path Foods, Inc.*, No. 8:19-CV-1241-T-23JSS, 2020 WL 13601692, at *4 (M.D. Fla. June 19, 2020).

before the discovery cut-off yet failed to take any action. There is also no indication that Defendants attempted to confer with Plaintiff regarding the alleged deficiencies either before or after the filing deadline, let alone before the close of discovery. As such, the Court finds that any implied claim of prejudice on the part of Defendants is unpersuasive. *See Torres*, 555 F. Supp. 3d at 1300 ("Since [Wal-Mart] could have done much more—much earlier—to resolve the summary's deficiencies, its claimed prejudice rings hollow now.").

Fourth, the Court does not find any harm in allowing Plaintiff to supplement her expert disclosure at this juncture, given that Defendants were already aware of Dr. Missirian's anticipated testimony[6] and still have time to prepare for trial and, if necessary, depose Dr. Missirian regarding the facts and opinions in the supplemental Rule 26(a)(2)(C) disclosure as well as the recently filed affidavit.[7]

The Court accordingly finds that while Plaintiff's expert witness disclosure fails to satisfy Rule 26(a)(2)(C), the failure is harmless.[8] Accordingly, the Court declines to strike or exclude Dr. Missirian's opinions or his affidavit at this time, particularly given that the Court is allowing additional limited discovery for both parties' experts.

Although the Court has not excluded Dr. Missirian's affidavit or medical reports, the Court still must determine whether the evidence is sufficient to overcome summary judgment. The Court

---

[6] *See Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 686 (N.D. Fla. 2020) ("A discovery violation is more likely to be harmless when the injured party was provided some knowledge of the relevant information.").

[7] The Court notes that Defendants fail to challenge the timeliness of Dr. Missirian's affidavit in their Reply.

[8] *See Brackett v. Nat'l Specialty Ins. Co.*, No. 2:21-cv-269-JLB-MRM, 2022 WL 2915659, at *3 (M.D. Fla. May 31, 2022) (finding that a "failure to provide a sufficient disclosure under Rule 26(a)(2)(C) was harmless under Rule 37 because (1) Defendant has been on notice as to the subject matter of [the expert's] testimony since the inception of [the] case and (2) any prejudice resulting from Plaintiff's insufficient disclosure can be cured by a supplemental disclosure").

finds that Dr. Missirian's affidavit is sufficient. In the affidavit, Dr. Missirian asserts that based on his treatment of Plaintiff and his objective findings, "it is [his] expert opinion that [Plaintiff] sustained a permanent injury." ECF No. [31-7] at 4. Dr. Missirian states that it is his "expert opinion based upon a reasonable degree of medical probability that [Plaintiff] suffered a permanent injury . . . and that she will need future medical care for the injuries suffered in the July 2024, automobile accident." *Id.* Those statements establish not only that Plaintiff's injuries are permanent but that the injuries were caused by the July 9, 2024 automobile accident at issue in this case. *See Frank v. Nature's Path Foods, Inc.*, No. 8:19-CV-1241-T-23JSS, 2020 WL 13601692, at *5 (M.D. Fla. June 19, 2020) (noting that treating physicians can provide expert testimony as to causation without providing an expert report). Accordingly, because Defendants do not dispute their liability, and because Plaintiff has established a genuine dispute as to causation and damages, Defendants' Motion is denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion for Summary Judgment, **ECF No. [28]**, is **DENIED**.

2.   Discovery is reopened on a limited basis until **January 5, 2025**.

3.   Plaintiff shall file an Amended Rule 26(a)(2)(C) disclosure regarding Dr. Missirian's anticipated testimony no later than **November 28, 2025**.

4.   The parties shall complete any depositions of experts by **January 5, 2025**. Failure to take all reasonable efforts to make the party's expert available for deposition may result in sanctions including exclusion of the party's expert at trial.

5.   No other discovery shall be permitted in this case.

6. Plaintiff's Motion to Strike Defendant's Expert Dr. David J. Fletcher Due to Untimeliness, **ECF No. [34]**, is **DENIED AS MOOT**.

7. Plaintiff's Motion to Strike Defendants' Expert Dr. David J. Fletcher or in the Alternative Limit His Testimony, **ECF No. [36]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 24, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record